## A08A2017. MAHONE v. THE STATE.
(674 SE2d 411)

PHIPPS, Judge.

Marvis Mahone was convicted of sale of cocaine and of possession of cocaine with intent to distribute within 1,000 feet of a public housing project. The state presented evidence that a City of Hampton police officer assigned to a multi-jurisdictional drug task force operating in Spalding County made an undercover buy of cocaine from Mahone near the Spalding Heights housing project in the City of Griffin. In this appeal of his convictions, Mahone challenges the sufficiency of the evidence to establish beyond a reasonable doubt his identity as the seller, to prove that the property near which the cocaine had been sold was a public housing project, and to show venue in Spalding County. Finding the evidence insufficient to show that the subject property was a public housing project but adequate in other regards, we affirm Mahone's conviction for sale of cocaine but reverse his conviction for possession of cocaine with intent to distribute within 1,000 feet of a public housing project.

City of Hampton police officer Jeremy Pirtle testified that he made the cocaine buy from Mahone on January 6, 2006. Pirtle was not very familiar with City of Griffin streets, and local law enforcement officers directed him to areas where they had had complaints and problems involving drugs. Pirtle drove an undercover vehicle equipped with an audio/video camera to a small strip shopping center with a check cashing store. When he arrived, he encountered Mahone and others standing in the parking lot. After being greeted by Pirtle, Mahone asked what he needed. Pirtle responded in street slang that he wanted ten dollars worth of crack cocaine. In short order, Mahone handed Pirtle a piece of crack cocaine, and Pirtle gave Mahone ten dollars. After the drug buy, local officers returned to police headquarters, viewed the videotape of the buy, and recognized Mahone as the seller. They retrieved a picture of Mahone from the Spalding County Sheriff's Office. Upon being shown the picture, Pirtle identified Mahone as the cocaine seller. Because the buy from Mahone occurred during the very beginning of a 60-day undercover drug investigation, he was not, however, arrested until March 14, 2006. At Mahone's March 6, 2007 trial, Pirtle viewed the videotape of the cocaine buy and made an in-court identification of Mahone as the drug seller. According to Pirtle, he was only a couple of feet from Mahone during the buy, the buy occurred during daylight hours, he thus got a good look at Mahone's face, and there was therefore no doubt in his mind that Mahone was the seller.

Tom Elrod, who had been working as a narcotics investigator for the Spalding County Sheriff's Office at the time of the undercover operation, testified that the buy from Mahone took place on North

Hill Street near Sam's Check Cashing in a place Elrod described as "Spalding Heights area." Elrod later described Spalding Heights as a "housing development . . . a government housing unit."

1. Mahone first challenges the sufficiency of the evidence to show beyond a reasonable doubt that he was the person who sold cocaine to Pirtle at the strip shopping center on North Hill Street on January 6, because Pirtle's identification of him was not sufficiently reliable. There is no merit in this argument. Construed in a light most favorable to support the verdict, the evidence authorized any rational trier of fact to find beyond a reasonable doubt that Mahone was the person who sold the cocaine to Pirtle at the time and place in question.

2. Mahone claims that the state failed to prove venue, because Pirtle testified on direct examination that he was not very familiar with Griffin streets and that other officers had simply directed him where to go to make the drug buys. On redirect examination, however, the prosecutor asked Pirtle whether he had bought the drugs from Mahone on North Hill Street in Spalding County, Georgia, and Pirtle responded that he had. Mahone argues that Pirtle's affirmative answer to that questioning was without probative value, because of his earlier admission that he was not familiar with streets in Griffin.

Mahone's argument, though well constructed, is without merit. Although Pirtle testified that he was not familiar with Griffin streets, he did not testify that he was not familiar with Spalding County. In fact, Pirtle testified to the effect that he was on assignment to an undercover operation in Spalding County. Moreover, Pirtle testified that the drug buy took place in Griffin which (unlike Atlanta) is wholly contained within one county, i.e., Spalding.

3. Mahone challenges the sufficiency of the evidence to show that the cocaine sale took place on property located within 1,000 feet of a public housing project.

> OCGA § 16-13-32.5 (b) makes it "unlawful for any person to manufacture, distribute, dispense, or possess with intent to distribute a controlled substance or [m]arijuana or a counterfeit substance in, on, or within 1,000 feet of any real property of any publicly owned or publicly operated housing project. . . . For the purposes of this Code section, the term 'housing project' means any facilities under the jurisdiction of a housing authority which constitute single or multifamily dwelling units occupied by low and

moderate-income families pursuant to Chapter 13 of Title 8."[1]

OCGA § 16-13-32.5 (e) provides: "In a prosecution under this Code section, a map produced or reproduced by any municipal or county agency or department for the purpose of depicting the location and boundaries of the area on or within 1,000 feet of the real property of any publicly owned or publicly operated housing project . . . , or a true copy of the map, shall, if certified as a true copy by the custodian of the record, be admissible and shall constitute prima-facie evidence of the location and boundaries of the area, if the governing body of the municipality or county has approved the map as an official record of the location and boundaries of the area." This Code section further provides that it "shall not preclude the prosecution from introducing or relying upon any other evidence or testimony to establish any element of this offense."[2]

The prosecution in *Johnson v. State*[3] did not employ the statutorily authorized method to establish prima facie the location of the housing project. Instead it relied on the testimony of a special agent of the Georgia Bureau of Investigation. When asked how he knew it was a public housing project, he replied that "we just knew . . . it was city owned."[4] Because a development described by a witness only as a public housing project owned by a city may still not fall within the definition of a "housing project" under OCGA § 16-13-32.5 (b), we found the evidence insufficient to support the defendant's conviction of sale of cocaine within 1,000 feet of a public housing project.

In *Collins v. State*,[5] the only evidence to establish the fact that the property was a housing project came from the chief of police of the local municipality. He merely testified that the cocaine sale took place within 1,000 feet " 'from the Housing Authority property line.' "[6] We found this evidence wholly insufficient, noting that nowhere was there "any testimony that the Housing Authority property consisted of dwelling units, let alone dwelling units occu-

---

[1] *Johnson v. State*, 214 Ga. App. 77, 79-80 (2) (447 SE2d 74) (1994).

[2] Id. at 80 (2).

[3] Id.

[4] Id.

[5] 278 Ga. App. 103, 105-106 (1) (b) (628 SE2d 148) (2006).

[6] Id. at 105.

pied by low and moderate-income families.'"[7]

In *Menefee v. State*,[8] however, a police officer's description of the property as "a City of Marietta Housing Authority housing project" was sufficient to establish that it was a public housing project within the meaning of OCGA § 16-13-32.5.[9]

Here, a person who had been employed as a narcotics investigator by the county sheriff's department testified that the cocaine buy took place less than 1,000 feet from a government housing development. But unlike as in *Menefee*, he did not testify that the government housing development was the property of a municipal housing authority. And as in *Johnson* and *Collins*, he did not testify that the housing development was occupied by low and moderate-income families. Therefore, the evidence was insufficient to show that, in violation of OCGA § 16-13-32.5, Mahone possessed cocaine within 1,000 feet of a housing project.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Barnes, J., concur.*

DECIDED MARCH 3, 2009.

*Joseph J. Saia*, for appellant.
*Scott L. Ballard, District Attorney, Gail M. Travillian, Assistant District Attorney, George H. Weldon*, for appellee.

---

[7] Id.
[8] 226 Ga. App. 725, 726 (2) (487 SE2d 489) (1997).
[9] Id. at 727-728.